**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: | : Bankruptcy No. 20-11393-PMM |
| Rocky Schreck | : Chapter 13 |
|                 Debtor | : |
| | : |
| U.S. Bank National Association, not in its | : |
| individual capacity, but solely as Trustee for | : |
| the NRZ PASS-THROUGH TRUST XIV c/o | : |
| Fay Servicing, LLC | : |
|                 Movant | : |
|     vs. | : |
| | : |
| Rocky Schreck | : |
|                 Debtor/Respondent | : |
|     and | : |
| Scott F. Waterman, Esquire | : |
|                 Trustee/Respondent | : |

<u>**MOTION FOR RELIEF FROM AUTOMATIC STAY, UNDER 11 U.S.C. § 362**</u>

Movant, by its Attorneys, Hladik, Onorato & Federman, LLP, hereby requests a Termination of the Automatic Stay and leave to proceed with its State Court rights provided under the terms of the Mortgage.

1.	Movant is U.S. Bank National Association, not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust XIV c/o Fay Servicing, LLC ("Movant").

2.	Debtor, Rocky Schreck ("Debtor") is the owner of the premises located at 1410 Krumsville Road, Lenhartsville, PA 19534 (the "Property").

3.	Scott F. Waterman, Esquire is the Trustee appointed by the Court.

4.	Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on March 04, 2020.

5.	Movant is the holder of a mortgage lien on the Property in the original principal amount of $155,000.00, which was recorded on November 07, 2003 (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as Exhibit "A."

6.	The Mortgage was assigned to Movant by way of a series of written assignments of mortgage, the last of which was recorded on December 12, 2017. A true and correct copy of the assignment of mortgage is attached hereto as Exhibit "B."

7.      Movant has not received the monthly post-petition Mortgage payments from March 29, 2020 through May 29, 2019 in the amount of $1,502.06 each, as well as legal fees and filing costs associated with this motion in the amount of $1,231.00 for a total post-petition arrearage of $5,737.18.

8.      Movant has cause to have the Automatic Stay terminated, in order to permit Movant to complete foreclosure on its Mortgage.

**WHEREFORE,** Movant respectfully requests that this Court enter an Order:

a.      Modifying the Automatic Stay under 11 U.S.C. § 362 of the Bankruptcy Code with respect to the Property as to permit Movant to foreclose on its Mortgage and allow Movant or any other purchaser at Sheriff's Sale to take legal or consensual action for enforcement of its right to possession of, or title to; and

b.      Permitting Movant to offer and provide Debtors with information regarding a potential Forbearance Agreement, short sale, deed in lieu, loan modification, Refinance Agreement, or other loan workout/loss mitigation agreement, and to enter into such agreement with Debtors without further order of the court; and

c.      Granting any other relief that this Court deems equitable and just.

Respectfully Submitted,

Date: 06/15/2020

/s/ Stephen M. Hladik, Esquire
Stephen M. Hladik, Esquire
Hladik, Onorato & Federman, LLP
Attorney I.D. # 66287
298 Wissahickon Avenue
North Wales, PA 19454
Phone 215-855-9521
Email: shladik@hoflawgroup.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : Bankruptcy No. 20-11393-PMM |
| Rocky Schreck | : Chapter 13 |
|     Debtor | : |
| | : |
| U.S. Bank National Association, not in its | : |
| individual capacity, but solely as trustee of | : |
| NRZ Pass-Through Trust XIV c/o Fay | : |
| Servicing, LLC | : |
|     Movant | : |
|     vs. | : |
| | : |
| Rocky Schreck | : |
|     Debtor/Respondent | : |
|     and | : |
| Scott F. Waterman, Esquire | : |
|     Trustee/Respondent | : |

## CERTIFICATION OF SERVICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE

       I, Stephen M. Hladik. Esquire, attorney for Movant, U.S. Bank National Association, not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust XIV c/o Fay Servicing, LLC, hereby certify that I served a true and correct copy of the Motion for Relief from Automatic Stay and Notice of Motion, Response Deadline and Hearing Date, by United States Mail, first class, postage prepaid, or Electronic Mail on **06/15/2020** upon the following:

| | |
|---|---|
| Michael D. Hess, Esquire<br>Via ECF<br>*Attorney for Debtor* | Rocky Schreck<br>1410 Krumsville Road<br>Lenhartsville, PA 19534<br>Via First Class Mail<br>*Debtor* |
| Scott F. Waterman, Esquire<br>Via ECF<br>*Trustee* | |
| | Rocky Schreck<br>PO Box 143<br>Kempton, PA 19529<br>Via First Class Mail<br>*Debtor* |

Dated: 06/15/2020

        /s/ Stephen M. Hladik, Esquire
        Stephen M. Hladik, Esquire
        Hladik, Onorato & Federman, LLP
        Attorney I.D. # 66287
        298 Wissahickon Avenue
        North Wales, PA 19454
        Phone 215-855-9521
        Email:shladik@hoflawgroup.com

# **EXHIBIT A**

## edge abstract
## File No. ▮▮▮▮▮

Prepared By:

Nicole McCallum
500 Forest Point Circle,
Charlotte, NC 28273

Parcel Number:

Return To:
Regions Bank
Attn: Collateral Mgmt.
500 Forest Point Circle
Charlotte, NC 28273

---
——————————|Space Above This Line For Recording Data]——————————

# MORGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated October 24, 2003 together with all Riders to this document.

**(B) "Borrower"** is Rocky Schreck

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee** under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3039  1/01

(USMD)  -6A(PA) (0202)

Page 1 of 16          Initials: RS

VMP MORTGAGE FORMS - (800)521-7291

/L3923PG2217

(D) "Lender" is Regions Bank

Lender is a Corporation
organized and existing under the laws of Alabama
Lender's address is 500 Forest Point Circle, Charlotte, NC 28273

(E) "Note" means the promissory note signed by Borrower and dated October 24, 2003
The Note states that Borrower owes Lender one hundred fifty-five thousand and 00/100
Dollars
(U.S. $155,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 29, 2033          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Arbitration Rider
PrePayment Penalty Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(PA) (0202)                    Page 2 of 16              Initials PS              Form 3039  1/01

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County          [Type of Recording Jurisdiction]
of ~~Lenhartsville~~   Berks                                                                    [Name of Recording Jurisdiction]:
See Attached Exhibit A

which currently has the address of ~~141~~ *140* Krumsville Road                *19534*        [Street]
*Lenhartsville*  ~~Lenhartsville~~                                    [City], Pennsylvania ~~19555~~     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

-6A(PA) (0202)                            Page 3 of 16          Initials: *RS*          Form 3039  1/01

VL3923PG2219

ALL THAT CERTAIN tract of woodland situate northwest of Legislative Route # 06134 leading from Kutztown to Krumsville in the Township of Greenwhich, County of Berks and Commonwealth of Pennsylvania, bounded and described as follows to wit:-

BEGINNING at a concrete monument 628.06 feet west of the limestone corner at the land of William Merkel and the land of Elwood L. Frederick; thence along the land of William Merkel and Nevin Hamm South 11 degrees 56 minutes30 seconds West 578.25 feet to a concrete monument and the land of Kenneth L. and Donna E. Hamm; thence along the land of the same North 83 degrees 28 minutes West 361.35 feet to a concrete monument and the land of Elwood L. Frederick; thence along the land of Elwood L. Frederick North 11 degrees 56 minutes 30 seconds East 629.91 feet to an iron pin and the land of the same; thence along the land of the same South 78 degrees 03 minutes 30 seconds East 342.13 feet to the place of beginning.

PURPART NO. 1

ALL THAT CERTAIN tract or piece of land situate in the Township of Greenwhich, County of Berks and Commonwealth of Pennsylvania, bounded and described as follows, to wit:-

BEGINNING at a stake in line of lands conveyed to Daniel W. Kemp, Jr. and wife; thence by the same North 63 degrees West 22 perches to a stake in line of other lands of Daniel Kemp, Sr.; thence by the same North 84-1/2 degrees East 21.9 perches to a stone; thence by lands of late Wilson Merkel South 12 degrees West 13 perches to the place of beginning.

PURPART NO. 2

ALL THAT CERTAIN lot or piece of ground situate in Greenwhich Township, Berks County, Pennsylvania, bounded and described as follows, to wit:-

BEGINNING at a 30" oak at the property line of Samuel G. and Grace E. Hamm, his wife and the land of William H. Merkel and Edna M. Merkel, his wife; thence along the land of William H. Merkel and Edna M. Merkel, his wife, South 78 degrees East 179 feet to an iron pin in the center of Legislative Route 06134 leading to Krumsville, thence along the road South 52 degrees East 177.25 feet to an iron pin in the land of Samuel G. Hamm and Grace E. Hamm, his wife; thence along the north side of an earth drive South 78 degrees West 67.56 feet to an iron pin and the land of the same; thence along the land of the same North 9 degrees East 164.5 feet to the place of beginning.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6A(PA) (0202)                    Page 4 of 15            Initials: RS            Form 3039  1/01

ſL3923PG2221

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(PA) (0202)    Page 7 of 16    Initials: _RS_    Form 3039  1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(PA) (0207)                        Page 8 of 16            Initials: _RS_            Form 3039  1/01

IL3923PG2226

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

-6A(PA) (0202)                    Page 10 of 16                    Initials: _____                    Form 3039  1/01

L3923PG2227

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to

---

-6A(PA) (0202)                          Page 11 of 16                 Initials: RS                    Form 3039   1/01

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

-6A(PA) (0202)                                    Page 12 of 16                        Initials: _____        Form 3039  1/01

TL3923PG2229

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(PA) (0207)                     Page 13 of 16             Initials: PS          Form 3039   1/01

ML3923PG2230

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify the default must be cured; and (d) that failure to cure the default as specified may result in the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

-6A(PA) (0202)    Page 14 of 16    Form 3039   1/01

VL3923PG2231

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            Rocky Schreck                -Borrower

_____          _____ (Seal)
                                                                          -Borrower

_____ (Seal)              _____ (Seal)
                      -Borrower                                           -Borrower

_____ (Seal)              _____ (Seal)
                      -Borrower                                           -Borrower

_____ (Seal)              _____ (Seal)
                      -Borrower                                           -Borrower

■

-6A(PA) (0202)                    Page 15 of 16                    Form 3039   1/01

VL3923PG2232.

**Certificate of Residence**

I, *Sharon L Johnson* ., do hereby certify that the correct address of the within-named Lender is **500 Forest Point Circle, Charlotte, NC 28273**

Witness my hand this **24th** day of **October, 2003**

_____

Agent of Lender

**COMMONWEALTH OF PENNSYLVANIA,** *Berks* County ss:

On this, the **24** day of *October 2003*, before me, the undersigned officer, personally appeared **Rocky Schreck**

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

_____

Notarial Seal
Sharon L. Johnson, Notary Public
Cumru Twp., Berks County
My Commission Expires May 27, 2006

Notary Public
Title of Officer

-6A(PA) (0202)    Page 16 of 16    Initials: RS    Form 3039   1/01

VL3923PG2233

**ARBITRATION RIDER**
(To Be Recorded Together with Security Instrument)

THIS RIDER is made this 24th day of October 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to Regions Bank (the "Lender") of the same date and covering the property described in the Security Instrument and located at

1410 R̶̶    Leghartsville Pa 19534
141 Krumsville Road, ~~Limekiln, PA 19535~~

(Property Address)

As used in this Rider, the term "Lender" includes Lender's successors and assigns and the company servicing the Note on Lender's behalf.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** Any claim, dispute or controversy (whether in contract, tort, or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively "claim"), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. Sections 1-16) and the Code of Procedure of the National Arbitration Forum in effect at the time a claim is filed. Copies of the arbitration rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, at P.O. Box 50191, Minneapolis, MN 55404, on the World Wide Web at www.arb-forum.com or by calling (800) 474-2371.

This agreement to arbitrate shall apply no matter by whom or against whom a claim is made. Any election to arbitrate may be made at any time, regardless of whether a lawsuit has been filed or not, and such party making the election may bring a motion in any court having jurisdiction to compel arbitration of any claim and/or to stay the litigation of any claim pending arbitration. Any participatory arbitration hearing will take place in the federal judicial district of the Borrower's residence, unless a different location is agreed to by Borrower and Lender. At Borrower's request, Lender will advance the first $150 of the filing and hearing fees for any claim which the Borrower may file against the Lender. The arbitrator will decide which party will ultimately be responsible for paying these fees. All claims between the Borrower and Lender shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons, or class of persons other than Borrower or Lender. The arbitrator shall apply relevant law and provide written, reasoned findings of fact and conclusions of law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

**EXCLUSIONS FROM ARBITRATION.** This arbitration agreement shall not apply to rights or obligations under the loan documents that allow the Lender to foreclose or otherwise take possession of property securing the loan, including repossession, foreclose or unlawful detainer. Nor shall it be construed to prevent any party's use of bankruptcy or judicial foreclosure. No provision of this agreement shall limit the right of the Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to reinstate". Subject to these limitations, this arbitration agreement will survive the pay-off of the loan.

**SEVERABILITY.** If the arbitrator or any court determines that one or more terms of this arbitration agreement or the arbitration Code are unenforceable, such determination shall not impair or affect the enforceability of the other terms of this arbitration agreement or the arbitration Code.

▮▮▮▮▮▮   Page 1 of 2

VL3923PG2234

/

NOTICE:   WHEN YOU SIGN THIS ARBITRATION RIDER, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE MAY BE DECIDED EXCLUSIVELY BY ARBITRATION.  YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR CLAIMANTS IN CONNECTION WITH A CLAIM OR DISPUTE.  DISCOVERY IN ARBITRATION PROCEEDINGS IS LIMITED IN THE MANNER PROVIDED BY THIS AGREEMENT AND THE RULES OF ARBITRATION.  THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING.  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.  IT IS IMPORTANT THAT YOU READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY BEFORE SIGNING THIS ARBITRATION RIDER.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

_Rocky Schreck_
Rocky Schreck

Page 2 of 2

VL3923PG2235

## Prepayment Penalty Rider to Security Instrument

(To Be Recorded Together with Security Instrument)

This PREPAYMENT PENALTY RIDER (the "Rider") is made this 24th day of October, 2003 and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s)") to Regions Bank (the "Lender") to secure repayment of a Note in the amount of U.S. $ 155,000.00

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and the Lender further agree as follows

### PREPAYMENT PENALTY

If I prepay this loan in full within 3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an amount equal to 6.00% of the balance of the loan outstanding on the date of prepayment. This amount, known as a prepayment penalty, will be in addition to any other amounts I may owe under the provisions of the Note or the Security Instrument that secures the Note. If I make a prepayment in full on or after the 3rd anniversary date of the Note, the Note Holder will impose no prepayment penalty.



Rocky Schreck



RECORDED IN BERKS CO, PA

RECORDER OF DEEDS

RECORDER'S OFFICE
BERKS COUNTY, PA

VL3923PG2237

# EXHIBIT B

 



RECORDED DATE: 04/12/2012 01:47:46 PM

**Frederick C. Sheeler**
**Berks County Recorder of Deeds**

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| Document Type: **ASSIGNMENT OF MORTGAGE** | Transaction #: |
| | Document Page Count: 2 |
| | Operator Id: jgehris |

| **RETURN TO:** (Ingeo) | **SUBMITTED BY:** |
| ELOISE CRAYTON | ELOISE CRAYTON |
| 636 GRAND REGENCY BLVD | 636 GRAND REGENCY BLVD |
| BRANDON FL | |
| 33510 | BRANDON, FL 33510 |

**\* PROPERTY DATA:**

**\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA**

**\* ASSOCIATED DOCUMENT(S):**

**FEES / TAXES:**

| RECORDING FEES: ASSIGNMENT OF MORTGAGE | $26.00 |
| RECORDS IMPROVEMENT FUND | $5.00 |
| JUDICIAL FEE | $23.50 |
| WRIT TAX | $0.50 |
| **Total:** | **$55.00** |

Recorded Date: 04/12/2012 01:47:46 PM

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office in
Berks County, Pennsylvania.



**Frederick C. Sheeler**
**Recorder of Deeds**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 3

# PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.**

***Send All Notices to Assignee***

**RECORDING REQUESTED BY:**
HSBC MORTGAGE SERVICES
ELOISE CRAYTON
636 GRAND REGENCY BLVD
BRANDON FL 33510

**WHEN RECORDED MAIL TO:**
HSBC MORTGAGE SERVICES
MORTGAGE RELEASE
636 GRAND REGENCY BLVD
BRANDON FL 33510

Parcel Identifier No:

## ASSIGNMENT OF MORTGAGE

    For Value Received, the undersigned holder of a Mortgage, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR REGIONS BANK "ITS SUCCESSORS AND ASSIGNS"** (herein "Assignor") whose address is **1595 SPRING HILL ROAD STE 310 VIENNA, VA 22182** , does hereby grant, sell, assign, transfer, and convey, unto **HSBC BANK USA NA** (herein "Assignee"), whose address is **636 GRAND REGENCY BLVD. , BRANDON, FL 33510** , a certain Mortgage dated **10/24/2003** and recorded **11/07/2003** , made and executed by **ROCKY SCHRECK** , to and in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR REGIONS BANK, "ITS SUCCESSORS AND ASSIGNS"** upon the following described property. Such Mortgage having been given to secure payment of **$155000.00** which Mortgage is of record in Book, Volume or Liber No. **3923** , at Page **2217** , as Document No.  ██████, of the Records of **Berks** County, State of **PA** , together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.
Property Address:1410 KRUMSVILLE ROAD LENHARTSVILLE PA 19534

    Legal Description:
Municipality: **Township of GREENWHICH**
    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **04/10/2012** .
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR REGIONS BANK "ITS SUCCESSORS AND ASSIGNS"**

MELISSA D CLEARY, Assistant Secretary

STATE OF FL
COUNTY OF Hillsborough } s.s.

On **04/10/2012** , before me **TREVIN MYERS** , Notary Public, personally appeared **MELISSA D CLEARY** , **Assistant Secretary** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR REGIONS BANK "ITS SUCCESSORS AND ASSIGNS"** personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

TREVIN MYERS
Commission ▮▮▮▮▮
My Commission Expires: **05/30/2015**

Drafted By: **ELOISE CRAYTON**

I do certify that the precise address of **HSBC BANK USA NA** is **636 GRAND REGENCY BLVD. , BRANDON, FL 33510**

Attested By:

MELISSA D CLEARY, Assistant Secretary

 



RECORDED DATE: 12/12/2017 11:57:22 AM

Frederick C. Sheeler
Berks County Recorder of Deeds

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| | |
|---|---|
| **Document Type:**   ASSIGNMENT OF MORTGAGE | **Transaction #:** |
| | **Document Page Count:**   2 |
| | **Operator Id:**   llaboy |
| **PARCEL ID(s): (See doc for additional parcel #'s)** | **SUBMITTED BY:** |
| | Mission Capital Advisors LLC |
| | 1120 S CAPITAL OF TX HWY BLDG 3 STE 150 |
| | AUSTIN, TX 78746 |
| | (512) 327-0101 |

**\* PROPERTY DATA:**

\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA

| FEES / TAXES: | | |
|---|---|---|
| RECORDING FEES: ASSIGNMENT OF MORTGAGE | $26.25 | |
| RECORDS IMPROVEMENT FUND | $5.00 | |
| JUDICIAL FEE | $40.25 | |
| WRIT TAX | $0.50 | |
| PARCEL ID FEE | $10.00 | |
| **Total:** | **$82.00** | |

Recorded Date: 12/12/2017 11:57:22 AM

I hereby CERTIFY that this document is recorded
in the Recorder of Deeds Office in Berks County,
Pennsylvania.



*Frederick C Sheeler*

**Frederick C. Sheeler**
**Recorder of Deeds**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 3

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

When Recorded Return To:
S. Hunt
Mission Global LLC
5701 E. Hillsborough Ave
Ste 2327
Tampa, FL 33610

Property:
1410 KRUMSVILLE ROAD
LENHARTSVILLE, PA 19534
in the Township of Greenwhich

## CORPORATE ASSIGNMENT OF MORTGAGE

**Berks, Pennsylvania**
**SELLER'S SERVICING #:**

Date of Assignment: November 15th, 2017
Assignor: HSBC Bank USA, N.A.
Assignee: Citibank, N.A., not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust VI

I hereby certify the precise address of the within named Assignor is 636 Grand Regency Blvd, Brandon, FL 33510.

I hereby certify the precise address of the within named Assignee is 388 Greenwich St., 14th Fl., New York, NY 10013.

Executed By: Rocky Schreck To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR REGIONS BANK ITS SUCCESSORS AND ASSIGNS
Dated: 10-24-2003 Recorded: 11-07-2003 as Instrument/Document        Book/Reel/Liber 3923, Page/Folio 2217 In the County of Berks, State of Pennsylvania.

Property Address: 1410 KRUMSVILLE ROAD, LENHARTSVILLE, PA 19534 in the Township of Greenwhich

I do certify that the precise address of Citibank, N.A., not in its individual capacity, but solely as trustee of NRZ Pass-Through Trust VI is 388 Greenwich St., 14th Fl., New York, NY 10013
Attested By: _____

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $155,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

HSBC Bank USA, N.A.
On 12/6/17

By: _____
Brian Ferrito
                    VP and Asst. Sec,
STATE OF FL        AdminServ.Div
COUNTY OF Hillsborough

On 12/6/17 , before me, Angela Johnson , a Notary Public in and for
Hillsborough County in the State of FL /personally appeared Brian Ferrito ,
VP,Asst Secy, ASD/personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

Angela Johnson                    (This area for notarial seal)

ANGELA JOHNSON
NOTARY
My Comm. Expires
December 16, 2020
No. GG032614
STATE OF FLORIDA
PUBLIC

## NOTE

October 24, 2003
(Date)

Limekiln
(City)

PA
(State)

1418 RS    Lenhartsville Pa 19534

141 Krumsville Road, Limekiln, PA 19533
(Property Address)

**1. BORROWER'S PROMISE TO PAY**
 In return for a loan that I have received, I promise to pay U.S. $ 155,000.00 (this amount is called "principal"),
plus interest, to the order of the Lender. The Lender is Regions Bank
 I will make all payments under this Note in the form of cash, check or money order.
 I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer
and who is entitled to receive payments under this note is called the "Note Holder."

**2. INTEREST**
 Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay
interest at a yearly rate of 7.350%. The interest rate required by this Section 2 is the rate I will pay both before
and after any default described in Section 6(B) of this Note.
 I agree that the interest is governed by the provisions of Section 27 of the Federal Deposit Insurance Act (12
U.S.C. Section 1831(a)), and those regulations issued to interpret and implement Section 27. I further agree that
under Section 27, the interest rate, including the prepayment penalty, is subject only to limitations of the law of
Alabama. I also agree, except as governed by the aforementioned laws, that this loan shall be subject to the laws
of the state in which the real property that secures this Note is located.

**3. PAYMENTS**
 **(A) Time and Place of Payments**
  I will pay principal and interest by making a payment every month.
 I will make my monthly payment on the 29th day of each month beginning on November 29, 2003. I will make
these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of it's scheduled due date and
will be applied  to interest before principal. If on, October 29, 2033 , I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "maturity date."
 I will make my monthly payments at
**Regions Bank , 590 Forest Point Circle , Charlotte, NC 28273**
or at a different place if required by the Note Holder.

 **(B) Amount of Monthly Payments**
  My monthly payment will be in the amount of U.S. $ 1,067.91

**4. BORROWER'S RIGHT TO PREPAY**
**(A) Prepayment**   I have the right to make payments of principal at any time before they are due. A payment of
principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am
doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly
payment unless the Note Holder agrees in writing to those changes.

**(B) Prepayment Penalty**

 If I prepay this loan in full within  3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an
amount equal to 6.00% of the balance of the loan outstanding on the date of prepayment. This amount, known as a
prepayment penalty, will be in addition to any other amounts I may owe under the provisions of the Note or the
Security Instrument that secures the Note. If I make a prepayment in full on or after the 3rd anniversary date of the
Note, the Note Holder will impose no prepayment penalty.

Mulitstate Fixed Rate Note-Single Family
               Pennsylvania Version)

Page 1 of 3

Initials

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Page 2 of 3                              Initials 

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and  a beneficial interest in Borrower is sold or transferred ), without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Rocky Schreck_ _____ (Seal)          _____ (Seal)
Rocky Schreck                      -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                    -Borrower

Page 3 of 3                                  Initials _RS_

## Note Endorsements

Borrower(s): Rocky Schreck
Property Address: 141 Krumsville Road, Limekiln, PA  19535

Without Recourse, Pay to the Order of

**Equifirst Corporation**

Regional Bank
By:

Andrea Okey
Assistant Vice President

Without Recourse, Pay to the Order of:

Equifirst Corporation
By:

Andrea Okey
Assistant Vice President

Page 1 of 1